UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC N. TAYLOR, II, | **COMPLAINT** |
| Plaintiff, | **Civil Action No.:** |
| -against- | Jury Trial Demanded |
| GOOGLE LLC, | |
| Defendant. | |

ERIC N. TAYLOR, II ("Plaintiff"), by and through his attorneys, STEVENSON MARINO LLP, as and for his Complaint against GOOGLE LLC ("Defendant" or "Google"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon violations that Defendant committed of Plaintiff's rights guaranteed to him by: (i) the Uniformed Services Employment and Reemployment Act of 1994, 38 U.S.C. §§ 4301-4335 ("USERRA"); and (ii) any other claim(s) that can be inferred from the facts set forth herein.

2.      As described below, fully aware that Plaintiff was on active military deployment, Google terminated his employment on the basis of Plaintiff's military status after Plaintiff failed to join a videoconference while he was on military leave located in a secure facility.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 38 U.S.C. § 4323(b).

1

4.      The jurisdiction of this Court is additionally invoked pursuant to 28 U.S.C. § 1332(a)(2), as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

6.      At all relevant times herein, Plaintiff is a former employee of Google who currently resides at 79-32 262nd Street, Floral Park, New York 11001.

7.      At all relevant times herein, Defendant was and is a California corporation with its principal place of business located at 1650 Charleston Road, Mountain View, California 94043 and is an "employer" pursuant to 38 U.S.C. § 4303(4)(A).

## BACKGROUND FACTS

8.      Plaintiff is active member of the United States Naval Academy and has been in good standing since his enlistment in November 2020.

9.      In May 2023, Plaintiff engaged in discussions about a position at Google as a Leadership Support Security Officer ("LSSO") with a recruiter, Nicole Jacks.

10.      On May 5, 2023, Ms. Jacks inquired about Plaintiff's proof of a Law Enforcement Officers Safety Act ("LEOSA") permit that authorized him to carry a concealed firearm in any jurisdiction of the United States.

11.      On May 8, 2023, Plaintiff informed Ms. Jacks that he had contacted the Department of Homeland Security ("DHS") to request the credentials necessary for the LEOSA permit and was awaiting the department's response.

12.     On June 5, 2023, clearly satisfied with Plaintiff's diligence and representation, Defendant offered him a job for the LSSO position and Plaintiff began his employment on July 31, 2023.

13.     On August 14, 2023, Plaintiff contacted the DHS to receive an update on his LEOSA application. Based on the information he received, he informed Roger Copeland, Google Operations Manager of Training and Compliance, that there currently was no timeline as to when it will be received.

14.     On September 6, 2023, Mr. Copeland acknowledged Plaintiff's update and requested that he keep him "updated on any process or delays."

15.     On October 29, 2023, Plaintiff welcomed the birth of his daughter. Pursuant to Google's bonding policy, Plaintiff took intermittent leave during the following dates: Oct 29, 2023 - Jan 31, 2024; Feb 19, 2024 - February 29, 2024; March 17, 2024 - April 4, 2024; April 22, 2024 - June 3, 2024. In accordance with Google's policy, Plaintiff would work for four days and then take four days to fly home to be with his son and spouse in New York. While Plaintiff was fully in compliance with Google's policy, he sensed that there was an internal issue with his leave, as he was specifically asked by his manager, Roberto Bonilla, to take his leave all at once, rather than intermittently.

16.     On November 8, 2023, Plaintiff submitted an identification card that had been utilized for his LEOSA permit to Mr. Copeland for approval through Google's "Hedgehog Program," pending approval from Google's Vice President of Global Security & Resilience Services ("VP of GSRS"). Approval under the program would permit Plaintiff to carry a firearm at work within the scope of his duties.

17.     On November 10, 2023, the VP of GSRS granted Plaintiff approval. Under this authorization, Plaintiff carried a firearm in furtherance of his security duties at Google.

18.     On April 2, 2024, Plaintiff informed Mr. Bonilla that pursuant to Title 10 orders, he would be activated for military deployment with tentative dates between May 1, 2024, through September 30, 2024.

19.     Promptly after Plaintiff provided this notice regarding his leave due to his military orders, on April 13, 2024, Mr. Copeland emailed Plaintiff requesting the status of his LEOSA permit. In his email, Mr. Copeland stated that the identification card that he had previously approved six months earlier was insufficient under the Company's LEOSA requirement. On that same day, Mr. Copeland sent Plaintiff an email entitled: "Non-Compliance Notification: Google Executive Protection Team Firearms." The email included a warning to Plaintiff that he was out of compliance with Google's policy effective immediately, and that he had sixty days to gain compliance or face potential termination.

20.     On April 15, 2024, Plaintiff applied with the Department of Justice, Federal Bureau of Prisons, to receive credentials as a Qualified Law Enforcement Officer ("QLEO"), which supersedes the LEOSA credentials in compliance with Google's Executive Protection Team Firearms policy under the Hedgehog Program for his position as an LSSO.

21.     On May 15, 2024, Google provided Plaintiff with another notice to submit his LEOSA credentials no later than June 12, 2024.

22.     On May 28, 2024, Mr. Bonilla inquired about the status of Plaintiff's LEOSA permit.

23.     In response, on May 29, 2024, Plaintiff requested a small grace period due to the fact that he received military orders requiring his leave on June 4 through June 9, 2024, and deployment from June 11 through September 30, 2024.

24.     On May 30, 2024, without explanation and blatantly ignoring Plaintiff's military status, Plaintiff was denied his request by Google's Director of Leadership Support Services, Daniel Wallace. Plaintiff was again reminded of his deadline to submit his LEOSA credentials of June 12, 2024.

25.     On June 8, 2024, despite Google's insistence on disregarding Plaintiff's military status and military orders, Plaintiff was still able to timely provide confirmation that he successfully obtained his QLEO credentials and that he would have the official documents from the Department of Justice no later than June 17, 2024. Because Plaintiff was to be on active deployment according to his military orders, Plaintiff provided Mr. Wallace, Mr. Bonilla, and Mr. Copeland the point of contact in order to make sure his credentials were timely received.

26.     Neither Mr. Wallace, nor Mr. Bonilla, nor Mr. Copeland, nor anyone at Google responded to Plaintiff's email and willfully failed to contact him until after his military leave.

27.     On June 13, 2024, while Plaintiff was in a secure facility in Long Island, New York on military orders, Mr. Bonilla sent Plaintiff a 1:1 meeting request by email, requesting that he join a video call while also acknowledging that he was aware that Plaintiff was on military leave. Based on Plaintiff's location in a secure facility, he neither received the email nor had any access to it, and accordingly could not join.

28.     On that same day, June 13, 2024, fully aware that Plaintiff was being deprived of the benefit of being available based upon his military orders, Google terminated his employment substantially based on his military status.

5

29.     On June 14, 2024, Plaintiff emailed Google's People Operations to explain that he failed to receive notice of the meeting based upon his location in a secure military facility.

30.     On June 17, 2024, as he previously represented, he provided his QLEO credentials and requested that Google reconsider its termination notice on the basis that he complied with their request to do so, which was Google's only purported basis for termination.

31.     On June 18, 2024, Google's People Operations responded that Plaintiff's military orders were being disregarded on the basis that he missed Google's June 12 deadline.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**
*Failure to Accommodate in Violation of the ADA*

32.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

33.     Under USERRA § 4311, an employee "who is a member of ... or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion or any benefit of employment by an employer on the basis of that membership ... or obligation."

34.     As described above, Defendant is an employer within the meaning of USERRA, while Plaintiff is an employee within the meaning of USERRA.

35.     As described above, Defendant violated USERRA by terminating Plaintiff's employment substantially motivated by Plaintiff's military service.

36.     As described above, as a result of Defendant's unlawful discriminatory conduct in violation of USERRA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

6

## DEMAND FOR A JURY TRIAL

37.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a.     A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States laws;

b.     An order granting preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.     An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with Plaintiff's claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that Plaintiff would have received but for Defendant's unlawful conduct;

d.     An award of liquidated damages in amount equal to the amount of economic damages suffered by Plaintiff as a result of Defendant's willful violations of USERRA pursuant to 38 U.S.C. § 4323(d)(1)(C).

e.     An award to Plaintiff of reasonable attorneys' fees, as well as Plaintiff's costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

f.     An award of pre-judgment and post-judgment interest, as provided by law; and

      g.      Granting Plaintiff such other and further relief, including equitable relief, as this Court finds necessary and proper.

Dated:  White Plains, New York
          September 25, 2024

                                  Respectfully submitted,

                                  STEVENSON MARINO LLP
                                  *Attorneys for Plaintiff*
                                  445 Hamilton Avenue, Suite 1500
                                  White Plains, New York 10601
                                  Tel.    (212) 939-7229

              By:  _____
                            JEFFREY R. MAGUIRE